1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

JASON ERIK SCHMAUS                                      No.  2:20-cv-1356 DJC AC P

12

Plaintiff,

13

v.                                                      FINDINGS & RECOMMENDATIONS

14

P. COVELLO, et al.,

15

Defendants.

16

17         Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  Currently before the court is defendant's motion for summary judgment.  ECF

19   No. 53.

20         I.        Procedural History

21         On screening the complaint, the court found that plaintiff had stated a cognizable claim for

22   retaliation against defendant Smith.  ECF No. 10.  No other claims were sufficiently pled.  Id.

23   Plaintiff was given the option of proceeding on the complaint as screened or amending the

24   complaint.  Id. at 8.  He chose to proceed on the complaint as screened and voluntarily dismissed

25   his Eighth Amendment claims, as well as defendants Covello, Bal, Wong, Vaughn, and Gates.

26   ECF No. 25 at 2; ECF No. 26.  After the close of discovery, defendant moved for summary

27   judgment (ECF No. 53), which plaintiff opposes (ECF No. 62).

28   ////

1

1    II.    Plaintiff's Allegations

2         The complaint alleges that plaintiff's First Amendment rights were violated when

3    defendant reviewed plaintiff's medical grievance and threatened plaintiff with revocation of his

4    lower bunk chrono if plaintiff refused to "sign off" on the grievance.  ECF No. 1 at 6.  Plaintiff

5    refused and defendant revoked the chrono later that day.  Id.  As a result of his chrono being

6    revoked, plaintiff later fell from the top bunk and injured his knee, neck, and lower back.  Id. at 4,

7    6.

8    III.    Defendant's Request for Judicial Notice

9         Defendant's motion includes a request that the court take judicial notice of the California

10    Correctional Health Care Service Reasonable Accommodation Guidelines, rev. February 2015.

11    ECF No. 53-3.  "The court may judicially notice a fact that is not subject to reasonable dispute

12    because it: (1) is generally known . . . or (2) can be accurately and readily determined from

13    sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Because the

14    policy is a matter of public record and not subject to reasonable dispute, the request for judicial

15    notice will be granted.

16    IV.    Motion for Summary Judgment

17         A.    Defendant's Arguments

18         Defendant Smith moves for summary judgment on the grounds that he did not retaliate

19    against plaintiff and that plaintiff has no credible evidence to establish the elements of retaliation.

20    ECF No. 53-1 at 11-16.  Alternatively, Smith argues that he is entitled to qualified immunity.  Id.

21    at 16-18.

22         B.    Plaintiff's Response

23         At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil

24    Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely

25    disputed must support the assertion by . . . citing to particular parts of materials in the record."

26    Plaintiff has also failed to file a separate document in response to defendant's statement of

27    undisputed facts that identifies which facts are admitted and which are disputed, as required by

28    Local Rule 260(b).

1    "Pro se litigants must follow the same rules of procedure that govern other litigants."

2    <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), <u>overruled on other grounds</u>,

3    <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-

4    established that district courts are to "construe liberally motion papers and pleadings filed by *pro*

5    *se* inmates and should avoid applying summary judgment rules strictly."  <u>Thomas v. Ponder</u>, 611

6    F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel

7    "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes

8    upon a litigant," such as "limited access to legal materials" as well as "sources of proof."

9    <u>Jacobsen v. Filler</u>, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and

10    quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of "strict

11    literalness" with respect to the requirements of the summary judgment rule.  <u>Id.</u> (citation omitted).

12    Accordingly, the court considers the record before it in its entirety despite plaintiff's

13    failure to be in strict compliance with the applicable rules.  However, only those assertions in the

14    opposition which have evidentiary support in the record will be considered.

15    In response to defendant Smith's motion, plaintiff argues that defendant did in fact

16    retaliate against him.  ECF No. 62.  He does not address defendant's qualified immunity

17    argument.  <u>Id.</u>

18          C.    <u>Legal Standards for Summary Judgment</u>

19    Summary judgment is appropriate when the moving party "shows that there is no genuine

20    dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

21    Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

22    of proving the absence of a genuine issue of material fact."  <u>In re Oracle Corp. Sec. Litig.</u>, 627

23    F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  The

24    moving party may accomplish this by "citing to particular parts of materials in the record,

25    including depositions, documents, electronically stored information, affidavits or declarations,

26    stipulations (including those made for purposes of the motion only), admissions, interrogatory

27    answers, or other materials" or by showing that such materials "do not establish the absence or

28    ////

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the

4

1    "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

2    whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587 (citation and quotation

3    marks omitted).

4         "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

5    court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls

6    v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the

7    opposing party's obligation to produce a factual predicate from which the inference may be

8    drawn.  See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

9    demonstrate a genuine issue, the opposing party "must do more than simply show that there is

10   some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

11   omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

12   non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

13   U.S. at 289).

14        Defendant simultaneously served plaintiff with notice of the requirements for opposing a

15   motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for

16   summary judgment.  ECF No. 53-4; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir.

17   1988) (pro se prisoners must be provided with notice of the requirements for summary judgment);

18   Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

19        D.    Undisputed Material Facts

20        Plaintiff did not separately respond to defendant's statement of undisputed facts and the

21   facts are deemed undisputed except as otherwise discussed.[1]  Additional facts have been taken

22   from plaintiff's medical records and grievances where appropriate.[2]

23

24   [1]  Although plaintiff states that facts in ¶¶ 44-47 and 49-51 are in dispute because the documents
     they reference contain misrepresentations, he does not identify the alleged misrepresentations or
25   cite to any evidence establishing a factual dispute.  The unsupported and conclusory assertion of
     "misrepresentations" is insufficient to create a genuine dispute of fact.
26
     [2]  The court notes that at least four of defendant's facts related to the contents of plaintiff's
27   appeals are not properly supported because they cite to the wrong appeal documents.  See ECF
     No. 53-2 at 3-4, ¶¶ 20, 23, 26-27.  The court will therefore look to the documents themselves in
28   determining their content.

1    At all times relevant to the complaint, plaintiff was a prisoner in the custody of the

2  California Department of Corrections and Rehabilitation at Mule Creek State Prison, where

3  defendant Smith was employed as the Chief Physician and Surgeon.  Defendant's Undisputed

4  Statement of Facts (DSUF) (ECF No. 53-2) at 2, ¶¶ 1-2.  Defendant's duties included evaluating,

5  modifying, and discontinuing inmate accommodations.  DSUF ¶ 54.

6    Plaintiff was interviewed by defendant on July 3, 2017, about Health Care Appeal No.

7  17000926 (Grievance #1).  DSUF ¶ 15; ECF No. 53-3 at 10.  Plaintiff asserts that during the

8  interview, defendant threatened him, telling him to "sign off" on the grievance or his lower bunk

9  chrono would be revoked.  ECF No. 1 at 4-6.[3]  Defendant asserts that his custom and practice in

10  conducting prisoner interviews was to obtain information about whether the prisoner's grievance

11  was justified based on the patient's condition and treatment and that in evaluating an inmate's

12  accommodations he took action based solely on the necessity of the accommodation considering

13  the patient's condition.  DSUF ¶¶ 42, 53.[4]  On that same day, defendant issued a Comprehensive

14  Accommodation Chrono that changed plaintiff's housing designation from bottom bunk to

15  unrestricted.  DSUF ¶ 16; ECF No. 53-5 at 33.

16    On July 5, 2017, plaintiff filed Health Care Appeal No. 17000953 (Grievance #2) alleging

17  that defendant rescinded the lower bunk assignment without evaluating him "FOR NO OTHER

18  REASON THAN TO OBVIOUSLY RETALIATE AGAINST [HIM]" for filing Grievance #1.

19  ECF No. 53-5 at 26, 28; DSUF ¶¶ 19, 21.  The grievance does not allege defendant threatened to

20  rescind plaintiff's lower bunk accommodation or otherwise retaliate against him.  ECF No. 53-5

21  at 26, 28.

22  ////

23

24  [3]  Plaintiff's was signed under penalty of perjury (ECF No. 1 at 8) and "[a] plaintiff's verified
25  complaint may be considered as an affidavit in opposition to summary judgment if it is based on
   personal knowledge and sets forth specific facts admissible in evidence."  Lopez v. Smith, 203
26  F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc) (citation omitted).
   [4]  Plaintiff argues that ¶¶ 42 and 53 are "about the 'common practice' of Dr. Smith who is the
27  doctors who's [sic] practice that is in question before the court."  ECF No. 62 at 1.  However, he
   does not dispute that ¶¶ 42 and 53 accurately reflect defendant's common practice or otherwise
28  offer evidence of defendant's common practice and ¶¶ 42 at 53 are deemed undisputed.

On July 7, 2017, plaintiff submitted a Health Claims Service Request form seeking reinstatement of his bottom bunk accommodation. DSUF ¶ 17. He stated that "some clinician named 'SMITH' sent an accommodation chrono to me dated 7-3-17 that rescinded my lower bunk chrono." ECF No. 53-5 at 59;[5] DSUF ¶ 18.

On August 7, 2017, plaintiff was interviewed in connection with Grievance #2. DSUF ¶ 25; ECF No. 53-5 at 25. The second-level response[6] to the appeal states that plaintiff said he had nothing to add to his written appeal except that he felt defendant discontinued the lower bunk assignment as retaliation for him having filed so many appeals. ECF No. 53-5 at 31. The response does not include any indication that plaintiff reported a threat of retaliation made to him by defendant. Id. at 30-32.

On September 13, 2017, plaintiff appealed Grievance #2 to the Director's level stating that he was dissatisfied with the response and that "this clearly is medical staff retaliation in concert or tandem with CDCR staff in retaliation." Id. at 25, 29. He makes no mention of defendant threatening to retaliate against him. Id.

On December 6, 2017, Grievance #2 was denied at the Director's level. DSUF ¶ 33. The denial was based on the claims being refuted by health care staff and plaintiff's medical records, as well as plaintiff's failure to provide documentation to support his allegation of retaliation. ECF No. 53-5 at 22-23. It further stated that the lower bunk and other accommodations designated as permanent could be revised or removed by the provider, as indicated by the patient's status, at any time. Id. at 23.

On December 24, 2017, plaintiff filed Health Care Appeal No. 17000836 (Grievance #3). DSUF ¶ 37; ECF No. 53-5 at 43, 45. The appeal states that during plaintiff's July 3, 2017 interview, defendant threatened to rescind his lower bunk assignment by saying that if plaintiff did not "sign off on the 602," he would "NO LONGER HAVE A LOWER BUNK CHRONO." ECF No. 53-5 at 45. Plaintiff further stated that he "refused to sign off the 602 and [he] received

---

[5] In quoting plaintiff's grievances, minor spelling and grammatical errors will be corrected without notation.
[6] The grievance paperwork indicates that the first level was bypassed. ECF No. 53-5 at 24-25.

a chrono rescinding [his] 'PERMANENT' lower bunk chrono." Id. The grievance also reiterated claims from Grievance #1 and alleged that the doctor who was the subject of Grievance #1 had threatened him with retaliation. Id. at 43, 45. The allegation that defendant retaliated against plaintiff was not addressed at the institutional or headquarters' level because it was deemed duplicative of Grievance #2. Id. at 41, 48.

According to CDCR policy, accommodations such as assignments to a lower bunk are based on medical necessity or to ensure equal access to prisoner services, programs, and activities. DSUF ¶ 44. An accommodation "may be updated or rescinded at any time, even if previously written as permanent." DSFU ¶ 45. Permanent accommodations "may be revised or removed by the provider as indicated by the patient-inmate's status." DSUF ¶ 46. For bottom bunk assignments, the Accommodation Guidelines include a comprehensive accommodation formulary. DSUF ¶ 47; ECF No. 53-3 at 9. Some of the conditions establishing medical necessity include "[s]evere orthopedic conditions of . . . upper extremity" and "severe weakness of upper or lower extremity." ECF No. 53-3 at 9.

A medical encounter form from August 2017 stated that plaintiff had a 2003 MRI of his left spine that "showed minimal central posterior midline disc bulge at L4-5, without herniation;" a 2015 MRI of his right elbow, which "showed intact tendons, common extensor and common flexor tendinosis, intact ligaments, [and] no osseous or articular abnormalities;" and a 2016 x-ray of his right elbow which "showed no acute osseous abnormality." ECF No. 53-5 at 63; DSUF ¶¶ 49-51.

E.   Discussion

i.   Retaliation

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations and footnote omitted). "To prevail on a retaliation claim, a plaintiff must show that his protected conduct was 'the

1    "substantial" or "motivating" factor behind the defendant's conduct.'" Brodheim v. Cry, 584

2    F.3d 1262, 1271 (9th Cir. 2009) (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314

3    (9th Cir. 1989)).

4         "To raise a triable issue as to motive, [a plaintiff] must offer 'either direct evidence of

5    retaliatory motive or at least one of three general types of circumstantial evidence [of that

6    motive].'" McCollum v. Cal. Dep't Corr. & Rehab., 647 F.3d 870, 882 (9th Cir. 2011) (second

7    alteration in original) (quoting Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)).

8    Circumstantial evidence of motive may include (1) the proximity in time between the protected

9    conduct and the alleged retaliation; (2) the defendant's expressed opposition to the protected

10   conduct; and (3) other evidence showing that the defendant's reasons for the challenged action

11   were false or pretextual. Id. (quoting Allen, 283 F.3d at 1077). "[M]ere speculation that

12   defendants acted out of retaliation is not sufficient." Wood v. Yordy, 753 F.3d 899, 905 (9th Cir.

13   2014) (citations omitted).

14        Defendant first argues that plaintiff has failed to provide "credible" evidence of retaliatory

15   motive and relies on cases holding that speculation and timing alone are insufficient to sustain a

16   retaliation claim. ECF No. 53-1 at 12. Specifically, he argues that plaintiff's claim that

17   defendant threatened him is "highly suspect" because plaintiff did not allege he was threatened

18   with retaliation in Grievance #2 or his July 7, 2017 health care request, both of which were

19   submitted within days of the alleged threat. Id. at 13. He asserts that plaintiff "did not come up

20   with the allegation of an actual threat until months later when he filed another grievance – after he

21   discovered he needed to specify an act on the part of staff to support his retaliation claim." Id.

22   However, this argument necessarily fails because it is not the province of the district court to

23   make credibility assessments on summary judgment, and the timing of plaintiff's allegation that

24   he was threatened goes to strictly to his credibility, not to the sufficiency of the evidence. See

25   Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1039 (9th Cir. 2005) (while factfinder

26   can conclude "plaintiff's account is insufficiently detailed to be believable, the district court must

27   refrain from making such credibility assessments on summary judgment"); Anderson, 477 U.S. at

28   255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate

1    inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for

2    summary judgment . . . .").

3         Furthermore, defendant has proffered no evidence demonstrating that plaintiff has made

4    inconsistent statements such that his allegations must be excluded.  See Messick v. Horizon

5    Indus. Inc., 62 F.3d 1227, 1231 (9th Cir. 1995) ("While . . . a party may not 'create his own issue

6    of fact by an affidavit contradicting his prior deposition testimony,' the non-moving party is not

7    precluded from elaborating upon, explaining or clarifying prior testimony . . . ; minor

8    inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence

9    afford no basis for excluding an opposition affidavit." (internal citation omitted)).  Defendant is

10   free to raise plaintiff's prior omission at trial in an attempt to impugn his credibility, but these

11   types of credibility questions are for the jury to decide, not the court on a motion for summary

12   judgement.

13        Defendant next argues that because the plaintiff continued to appeal his grievance and

14   filed additional grievances, his rights were not actually chilled.  ECF No. 53-1 at 14.  However,

15   "the proper First Amendment inquiry asks whether an official's acts would chill or silence a

16   person of ordinary firmness from future First Amendment activities."  Rhodes, 408 F.3d at 568-

17   69 (citation and quotation marks omitted).  Significantly, "harm that is more than minimal will

18   almost always have a chilling effect."  Id. at 567 n.11.  So the question is whether defendant's

19   conduct would chill or silence a person of ordinary firmness from future First Amendment

20   activities, not whether it in fact chilled plaintiff's exercise for his First Amendment rights.

21   Threatening to remove and then removing an accommodation is the type of conduct likely to have

22   a chilling effect on a person of ordinary firmness.  See Tomel v. Hawaii, 570 F. App'x 717, 719

23   (9th Cir. 2014) ("Withholding medication and taking plaintiff off sick call lists is more than

24   minimal harm.").  The fact that plaintiff was ultimately not deterred from pursuing a grievance

25   does not entitle defendant to summary judgment.

26        Finally, defendant argues that his actions furthered a legitimate penological purpose

27   because plaintiff did not have a medical indication for a lower bunk accommodation.  ECF No.

28   53-1 at 15-16.  However, he fails to produce competent evidence in support of this argument.  In

1    response to plaintiff's assertion that his lower bunk chrono was issued because of his lower back

2    pain and weakness in his right arm, defendant asserts that while plaintiff had a bulging disc in his

3    lower back, he did not have surgery to correct it, and an MRI indicated that the bulge was

4    minimal with no herniation. Id. at 15. With respect to plaintiff's right arm, defendant states that

5    that plaintiff's arm instability and weakness was not sufficiently severe to warrant a low bunk.

6    Id. at 15-16. Even if the court assumes that plaintiff's lower back pain was insufficient grounds

7    to warrant a lower bunk chrono because it was not the result of an injury or surgery within the

8    past six months, severe weakness of an upper extremity is an indication of medical necessity. See

9    ECF No. 53-3 at 9 (indications for lower bunk chrono). While defendant argues that plaintiff's

10   weakness and instability were not severe enough to warrant a chrono, he does not provide

11   sufficient evidence to support this assertion. Although defendant's declaration states that he

12   never discontinued a prisoner's accommodation for the purpose of retaliation, he also states that

13   he does not recall why he rescinded plaintiff's lower bunk chrono. ECF No. 53-6 at 2.

14   Moreover, though defendant offers MRI and x-ray summaries, his declaration does not offer any

15   opinion as to whether the scant medical records would be sufficient to establish that plaintiff did

16   not qualify for a lower bunk or otherwise explain why plaintiff's records demonstrated he did not

17   qualify under the chrono criteria. See id. Nor does defendant provide a declaration from any

18   other medical professional addressing the significance of plaintiff's medical records or otherwise

19   opining that plaintiff's records demonstrate he was not eligible for a lower bunk chrono at that

20   time.[7] Defendant has therefore failed to establish that there was a legitimate correctional goal in

21   revoking plaintiff's lower bunk chrono.

22        For all these reasons, there exists a disputed issue of material fact as to whether Smith

23   threatened to and did take away plaintiff's accommodations for not signing off on a previous

24   grievance. Summary judgment should be denied.

25   ////

26   _____

27   [7] Defendant has produced an encounter form from August 23, 2017, which indicates that plaintiff
     saw a registered nurse regarding his request to reinstate his lower bunk chrono. ECF No. 53-5 at
     61-63. The form notes that plaintiff denied elbow pain at the time and summarized his x-ray and

28   MRI results without any explanation as to their significance. Id. at 63.

11

1            ii.      Qualified Immunity

2          Defendant alternatively argues that he is entitled to qualified immunity. ECF No. 53-1 at

3    16-18. "[G]overnment officials performing discretionary functions generally are shielded from

4    liability for civil damages insofar as their conduct does not violate clearly established statutory or

5    constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457

6    U.S. 800, 818 (1982) (citations omitted). In analyzing a qualified immunity defense, the court

7    must consider the following: (1) whether the alleged facts, taken in the light most favorable to the

8    plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2)

9    whether the right at issue was clearly established at the time of the incident. Saucier v. Katz, 533

10   U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009)

11   (overruling Saucier's requirement that the two prongs be decided sequentially). "[S]ummary

12   judgment based on qualified immunity is improper if, under the plaintiff's version of the facts,

13   and in light of the clearly established law, a reasonable officer could not have believed his

14   conduct was lawful." Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000) (citation

15   omitted).

16         As discussed above, there is a disputed issue of material fact as to the defendant's

17   motivation for revoking the chrono. Taking the evidence in the light most favorable to plaintiff,

18   defendant explicitly threatened to revoke plaintiff's chrono based on his grievance activity and

19   then did revoke the chrono without a legitimate reason, violating plaintiff's First Amendment

20   rights. Under this version of facts, defendant could not have reasonably believed that his conduct

21   was permissible. See Rhodes, 408 F.3d at 567 (2005) (prisoners have a First Amendment right to

22   file grievances and to be free from retaliation). This disputed fact therefore precludes summary

23   judgment on qualified immunity grounds for defendant Smith.

24         V.      Plain Language Summary of this Order for a Pro Se Litigant

25         It is being recommended that defendant's motion for summary judgement be denied. If

26   the district judge adopts this recommendation, your retaliation claim will proceed to trial.

27   ////

28   ////

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that defendant's request for judicial notice (ECF No. 53-3) is GRANTED.

IT IS FURTHER RECOMMENDED that defendant's motion for summary judgment (ECF No. 53) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED: February 20, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE